Christy E. **RADER**, Appellant,

v.

**FARMERS INSURANCE COMPANY, INC.**, Appellee.

No. 85311.

Supreme Court of Oklahoma.

Feb. 25, 1997.

Michael S. Homsey and Terry R. McMillan, Oklahoma City, for Appellant.

Lana Cohlmia Cohlmia, Homburg & Heath, P.C., Oklahoma City, for Appellee.

SIMMS, Justice:

Plaintiff below appeals from summary judgment in favor of defendant. The Court of Civil Appeals, Division 4, reversed summary judgment and remanded the cause to the trial court. Certiorari has been previously granted. Opinion of the Court of Appeals is vacated. However, the judgment of the trial court is reversed for reasons other than pronounced by the Court of Civil Appeals.

Plaintiff was injured as a result of a single vehicle accident. At the time of the accident, plaintiff was a passenger in the vehicle, which was owned by her father (Rader) but driven by her friend, Jeffery Glover. Allstate Insurance Company insured the Rader vehicle, under a policy providing liability and uninsured/under insured (UM) coverage. Farmers Insurance Company provided liability coverage for Glover, with policy limits of $10,000 per person.[1]

Approximately a year and eleven months after the accident, plaintiff filed a negligence action against Glover, seeking recovery of

damages for personal injuries sustained in the accident. Allstate did not assume Glover's defense, and he notified Farmers of the lawsuit. Farmers retained attorney John Martin to represent Glover, who filed an answer in the case.

Loyde Warren, plaintiff's attorney, entered into settlement negotiations with the two insurers. Warren wrote to Rhonda Wilson, a claims representative for Allstate, advising her that "Farmers Insurance Company has indicated that they (sic) are willing to settle for the policy limits of the negligent party [Glover]." Shortly thereafter, Warren and Wilson had a telephone conversation during which Wilson allegedly advised Warren that Allstate *was* accepting liability coverage, and its coverage would be primary to Glover's liability with Farmers, and Warren did not need a waiver of subrogation.

About a week later, a Farmers claims representative sent the following correspondence to Warren:

Mid Century Insurance Co. is offering their (sic) full policy limits on Ten Thousand Dollars to your client Christy Rader. We will need a waiver of subrogation from Ms. Rader's insurer or a full and final release.

We have enclosed a copy of our coverage sheet. Please let me know when accepted.

Attorneys Warren and Martin further discussed settlement terms. Based on information provided to him by Farmers, Martin purportedly continued to believe that Allstate was denying liability coverage and accept only UM coverage. Martin advised Warren that he could not forward the $10,000 without a waiver of subrgoation. Shortly thereafter, Martin wrote to Warren:

This letter is to confirm my phone conversation in which we have offered the $10,000.00 Policy limits to your client to settle her case against Jeffrey Glover. Please advise us when you are in a position to accept the money.

Mid Century is apparently a member of the Farmers group of companies.

---

1. Some of the materials in the appellate record indicate that Glover's actual liability insurer was Mid Century Insurance Company. However,

According to Martin, Warren never advised him that Allstate was accepting liability coverage. According to Warren, he did not know whether Allstate was offering UM or liability coverage: "Money is all I knew".

Allstate later approached Warren about participating in mediation to settle plaintiff's claim. A letter, dated March 5, 1991, confirms the scheduling of a mediation conference and provides notice of the conference to Warren and counsel for Allstate, but not to Farmers or Martin. Plaintiff settled with Allstate for $30,500.00. Later, Plaintiff and Rhonda Wilson executed a "Mediation Agreement", which reads, in part, "Plaintiff agrees to accept the sum of $30,500.00 as full settlement of all claims."

After mediation was completed, counsel for Allstate advised Martin that the case had been settled, with Allstate providing liability coverage for Glover. Warren contacted Martin and demanded the $10,000 that he claimed was previously negotiated. That demand was refused. Warren later filed this action to enforce the purported settlement agreement.

Farmers denied that settlement had been reached and asserted that Plaintiff had released all claims against Glover, her case had been settled "in its entirety", and that attorney Warren had misrepresented facts material to the negotiations. In the alternative, Farmers asserted that any agreement was unenforceable based on mutual mistake of fact.

Farmers moved for summary judgment on several grounds. Citing *McWhirter v. Fire Insurance Exchange, Inc.*, 878 P.2d 1056, (Okl.1994), Farmers argued that, as a stranger to the liability contract between it and Glover, Plaintiff had no direct cause of action against it for breach of contract. Farmers further argued that the offer of $10,000 was expressly conditioned on a waiver of subrogation, which was never received, and therefore the condition precedent was not satisfied. Finally, Farmers maintained that because there was mistaken belief by attorneys Martin and Warren as to Farmers' status as primary liability carrier, any settlement agreement that may have been reached was not enforceable based on such mutual mistake of fact.

Plaintiff opposed Farmers' motion for summary judgment, and moved for summary judgment in her own behalf. Plaintiff claimed *McWhirter*, supra, was distinguishable and inapplicable to her claim. She also asserted that the settlement agreement with Farmers did not involve a condition precedent. Finally, she asserted that there was no mutual mistake of fact but only a unilateral mistake by Farmers regarding which carrier had primary liability coverage, and if there was a mutual mistake, it was not material because Farmers was still a liability carrier with exposure regardless of whether its coverage was primary.

The trial court concluded that *McWhirter* was controlling and that plaintiff's cause of action for breach of contract against Farmers must fail. The trial court then entered judgment accordingly.

The Court of Civil Appeals reversed the judgment of the trial court holding that the factual distinction of post-litigation negotiations and pre-litigation negotiation, as was the case in *McWhirter*, is a *material* distinction which excepts the present case from *McWhirter*. Accepting this factual distinction as dispositive, the Court of Civil Appeals reversed the trial court judgment.

Because we find the pre-litigation / post-litigation dichotomy immaterial to this case, we have previously granted Certiorari to the Court of Civil Appeals.

The *gravamen* of plaintiff's claim is predicated on contract, i.e. an alleged agreement between the parties to settle plaintiff's claim for a specified amount of money in exchange for plaintiff dismissing her damage suit. Unlike *McWhirter*, the Claims Resolution Act, 36 O.S.1991 §§ 1221. et seq., is not an issue in this matter. Plaintiff does not seek recovery for "bad faith" on the part of Farmers, but seeks only to enforce the alleged contract of settlement.

Summary judgment is appropriate where there is no substantial controversy as to any material fact, and it appears that a party is entitled to judgment as a matter of law. *Vince Allen & Assoc. v. Delhi Gas*

*Pipeline Corp.,* 788 P.2d 414 (Okla.App.1989). Summary judgment was not appropriate in this case because issues of fact remain to be litigated, such as: Was there an actual contract between the parties, supported by adequate consideration, and, was there mutual mistake between the parties?

We conclude that the trial court erred when summary judgment was rendered in favor of Farmers by reason of *McWhirter,* and there remain fact issues to be tried.

JUDGMENT OF THE TRIAL COURT REVERSED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

All the Justices concur.